USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-2311 BIW DECEIVED, ET AL., Plaintiffs, Appellants, v. LOCAL S6, INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, IAMAW DISTRICT LODGE 4, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ _________________________ Jed Davis, with whom Linda Christ, Jim Mitchell and Jed __________ _____________ _____________________ Davis, P.A. were on brief, for appellants. ___________ Ralph L. Tucker, with whom James W. Case and McTeague, ________________ _______________ _________ Higbee, McAdam, Case, Watson and Cohen were on brief, for ___________________________________________ appellee. _________________________ December 30, 1997 _________________________ SELYA, Circuit Judge. In this procedural motley, a SELYA, Circuit Judge. ______________ band of plaintiffs the eponymous BIW Deceived locks horns with Local S6 of the Industrial Union of Marine and Shipbuilding Workers (the Union) over issues pertaining to removal and remand. The peculiarities of this engagement impel us to adumbrate our necessarily circuitous decisional path. After delineating the relevant facts and procedural history, we address whether the plaintiffs have waived their right to appeal either by inviting the judgment or by failing to seek our intervention at an earlier date. Finding no default, we proceed to the merits a journey that requires us to touch upon doctrinal aspects of preemption under federal labor law and to explore a question of first impression concerning the exercise of federal question jurisdiction in the context of the artful pleading doctrine. At journey's end, we conclude that the plaintiffs' complaint presents a colorable federal question and that, therefore, the district court did not err when it refused to return the case to a state venue. I. BACKGROUND I. BACKGROUND Because this action stumbled near the starting gate, the record is stunted and the facts before us are sparse. We present them as best they present themselves. In the fall of 1995, Bath Iron Works (Bath or BIW) hired a number of electricians and pipefitters. The Union participated in the job interviews pursuant to the terms of an existing collective bargaining agreement (the CBA). The 2 plaintiffs allege that during these interviews the Union told them that they would "be employed at least until the expiration of the current Union contract [August 1997]" and "probably until the end of the decade;" that Bath "had more work for electricians and pipefitters than it could handle;" and that Bath "was hiring fewer electricians and pipefitters than it needed, so that the employees would be assured of continuing employment." The plaintiffs further allege that they relied on these blandishments, accepted offers of employment, and left other jobs to move to Maine and work for Bath. But, the plaintiffs say, the Union had led them down a primrose path; they were laid off early in 1996. II. PROCEDURAL HISTORY II. PROCEDURAL HISTORY Angered by this fecklessness, the former employees joined together to form "BIW Deceived" and sue the Union in a Maine state court.1 Their complaint alleged negligence, fraudulent misrepresentation, fraud in the inducement, infliction of emotional distress, loss of consortium, intentional nondisclosure, and unjust enrichment. The Union promptly removed the action to the federal district court. When the plaintiffs sought remand on the ground that their suit involved only state- law claims, the Union responded by asserting that all the plaintiffs' claims were subject to preemption under the National  ____________________ 1Two of the plaintiffs are former employees' spouses. Since their claims for loss of consortium are derivative, we refer to the informal plaintiff class as if it were composed solely of ex- employees. 3 Labor Relations Act (NLRA), 29 U.S.C. 151 et seq., and/or the __ ____ Labor Management Relations Act (LMRA), 29 U.S.C. 185 et seq. __ ____ Judge Carter resolved the removal/remand dispute in the Union's favor. He denied the plaintiffs' motion, asserting in a two-page order that "the claims for relief set forth in the Complaint are all derivative from and dependent for their resolution upon duties defined and imposed by federal law, which law occupies the field and, by mandate of Congress, closes the field to state regulation." That order produced a strange reaction: the plaintiffs moved for entry of final judgment in the defendant's favor. They reasoned that, in refusing to remand, the district court had "conclu[ded] that federal law preempts all state claims," and that this conclusion "le[ft] nothing more to be litigated" in that court. Judge Carter denied this motion without elaboration. Shortly thereafter, Magistrate Judge Cohen presided over a status conference during which the plaintiffs represented that they had "no interest in [pressing] any federal-law claims" and that they desired the entry of final judgment in order to "appeal the [district court's] preemption ruling." The Union agreed not to oppose the entry of judgment in its favor. The next day, the plaintiffs moved for reconsideration and for entry of final judgment, specifically "abandon[ing] any and all federal claims." This time Judge Carter granted their motion and entered final judgment, without prejudice to the plaintiffs' right to seek review. This appeal followed. 4 III. APPELLATE JURISDICTION III. APPELLATE JURISDICTION It is a federal court's obligation to assure itself of the existence of subject matter jurisdiction even if no party presses the question. See American Policyholders Ins. Co. v. ___ _________________________________ Nyacol Prods., Inc., 989 F.2d 1256, 1258 (1st Cir. 1993). ____________________ Consequently, we consider whether the odd procedural posture of this case undermines our appellate jurisdiction. In several circuits a party who consents to the entry of judgment forfeits any right to appeal from that judgment. See, e.g., Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d ___ ____ ________________________ ________________ 1134, 1137 (5th Cir. 1992); Clapp v. Commissioner, 875 F.2d 1396, _____ ____________ 1398 (9th Cir. 1989). We have taken a slightly more latitudinarian approach: while acknowledging that, with few exceptions, "a party to a consent judgment is thereby deemed to waive any objections it has to matters within the scope of the judgment," Coughlin v. Regan, 768 F.2d 468, 469-70 (1st Cir. ________ _____ 1985),2 we nevertheless have suggested that "it is possible for a party to consent to a judgment and still preserve [its] right to appeal" a previous ruling on a contested matter in the case, as long as it "reserve[s] that right unequivocally." Id. at 470. ___ Such a reservation occurred here. The record makes manifest that the plaintiffs sought the entry of final judgment solely to facilitate an appeal of the district court's refusal to remand  ____________________ 2The specific exceptions mentioned by the Coughlin court ________ involve "a showing of either lack of actual consent, fraud in obtaining consent, lack of federal jurisdiction, or mistake." 768 F.2d at 470. 5 the suit. Their initial motion for entry of final judgment asked the court to enter a "final and appealable judgment;" the magistrate's report of the status conference related that the plaintiffs "simply seek the entry of final judgment so that they may appeal the court's preemption ruling;" and the renewed motion for entry of final judgment solicited the entry of a "final judgment, without prejudice to the plaintiffs' right to seek appeal." This evidence clearly shows the plaintiffs' unequivocal intention. Under Coughlin, then, we have discretion to accept ________ the appeal insofar as it relates to a prior (contested) order notwithstanding the plaintiffs' later consent to the entry of the final judgment itself. See Coughlin, 768 F.2d at 470. In this ___ ________ instance, we are inclined to exercise that discretion in the plaintiffs' favor. Even so, our appellate jurisdiction is not free from doubt. The parties treat this appeal as if Judge Carter dismissed the suit because the various causes of action were preempted, but this is an inaccurate characterization of what actually transpired. There was no dismissal: while Judge Carter expressed his belief that the plaintiffs' claims were preempted, the only ruling that he made on a contested matter consisted of denying the plaintiffs' motion to remand. This ruling did not require a finding of preemption; it only required a finding that the Union had made a colorable showing of federal jurisdiction. See infra Part V. That the judge's remarks swept more broadly ___ _____ 6 does not alter the reality of events. It is settled beyond peradventure that a party can appeal only from an adverse order or judgment, not from a judge's ruminations. See Logue v. Dore, ___ _____ ____ 103 F.3d 1040, 1047 (1st Cir. 1997); In re Admin. Warrant, 585 _____________________ F.2d 1152, 1153 (1st Cir. 1978). The plaintiffs could have waited until the Union filed a dispositive motion (say, a motion to dismiss or for summary judgment), but they chose not to do so. Thus, the district court's order denying the plaintiffs' motion to remand is the only order that is even potentially reviewable in this proceeding. The district court entered that order on July 3, 1996, and the plaintiffs did not file their notice of appeal until October 25, 1996. In some circuits, a disappointed suitor must appeal the denial of a motion to remand within the standard appeal period (here, thirty days, see Fed. R. App. P. 4(a)(1)), ___ or else forever hold his peace. See Marshall v. Manville Sales ___ ________ ______________ Corp., 6 F.3d 229, 231 (4th Cir. 1993) (noting that the Fourth _____ Circuit will not "disturb a district court's final judgment on the basis of a defective removal when the plaintiff ha[s] failed to seek an interlocutory appeal of the order denying remand"); Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 713 (9th _________ ____________________________ Cir. 1990) (holding that an objection to removal "is not preserved unless an interlocutory appeal is filed challenging the district court's order denying remand"). Other circuits  including this one generally consider orders refusing remand to be interlocutory orders, and thus a plaintiff whose remand 7 request has been rebuffed possesses no immediate right of appeal, but retains the right to press his point by taking an end-of-case appeal after the entry of final judgment. See Neal v. Brown, 980 ___ ____ _____ F.2d 747, 747 (D.C. Cir. 1992); Carriere v. Sears, Roebuck & Co., ________ ____________________ 893 F.2d 98, 100 n.2 (5th Cir. 1990); Brough v. United ______ ______ Steelworkers, 437 F.2d 748, 749 (1st Cir. 1971). Accordingly, ____________ the entry of final judgment in this case paved the way for appellate consideration of the order denying the motion to remand and BIW Deceived's timely appeal is properly before us. IV. THE LEGAL FRAMEWORK IV. THE LEGAL FRAMEWORK There are three interlocking pieces to the applicable legal framework. We trace their contours. A. Preemption. A. Preemption. __________ In the labor-law arena, preemption the displacement of state law by the force of federal law is a familiar phenomenon. Several different strains of preemption flourish in this field, each possessing somewhat different roots and each casting a uniquely configured shadow. Two of these preemption theories bear upon the instant case. 1. 1. __ Section 301 of the LMRA, 29 U.S.C. 185, confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." From this austere beginning, the Supreme Court determined that it had the authority to craft a federal common law that would effect section 301's 8 objectives. See Textile Workers Union v. Lincoln Mills, 353 U.S. ___ _____________________ _____________ 448, 451 (1957). The Court subsequently declared that section 301 preempts a state-law claim "if the resolution of [that] claim depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 ______ ________________________________ (1988). We recently visited this corner of the law in Flibotte ________ v. Pennsylvania Truck Lines, ___ F.3d ___ (1st Cir. 1997) [No. _________________________ 97-1197]. Citing United Steelworkers v. Rawson, 495 U.S. 362, ___________________ ______ 369 (1990), and Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 ____________________ _____ (1985), respectively, we explained that a state-law claim can depend upon the meaning of a collective bargaining agreement in either of two distinct ways: on the one hand, a claim can allege the violation of a duty that arises from the CBA itself, or, on the other hand, a claim can require a court to interpret a specific provision of the CBA. See Flibotte, ___ F.3d at ___ ___ ________ [slip op. at 9]. "If a state-law claim depends upon the meaning of the collective bargaining agreement in either of these ways  that is, under Rawson's `duty' rubric or under Allis-Chalmers's ______ ______________ `interpretation' rubric it is preempted." Id. ___ Though section 301 is omnipotent within its sphere, it is not endlessly expansive. The Court has warned that it "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," Livadas v. _______ Bradshaw, 512 U.S. 107, 123 (1994), and that "purely factual ________ questions about an employee's conduct or an employer's conduct 9 and motives do not require a court to interpret any term of a collective-bargaining agreement," Hawaiian Airlines, Inc. v. _________________________ Norris, 512 U.S. 246, 261 (1994) (citation and internal quotation ______ marks omitted). These cautions do not shrink the scope of section 301 preemption, but simply emphasize that, for a claim to arise under federal law, it must depend upon the meaning of the collective bargaining agreement. 2. 2. __ Preemption also can occur by operation of the so-called duty of fair representation (DFR). A union acting in its representative capacity owes this duty to those on whose behalf it acts. See Ford Motor Co. v. Huffman, 345 U.S. 330, 337 ___ _______________ _______ (1953). The duty derives from the union's status qua exclusive ___ bargaining agent. It implicates section 9(a) of the NLRA,3 and "includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 ____ _____ (1967).  ____________________ 3Section 9(a) provides in pertinent part: Representatives designated or selected for the purposes of collective bargaining by the majority of the employees . . . shall be the exclusive representatives of all the employees . . . for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment . . . . 29 U.S.C. 159(a). 10 A complaint that states a DFR claim "allege[s] a breach by the Union of a duty grounded in federal statutes and . . . federal law therefore governs [the] cause of action." Id. ___ Consequently, state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation. See Condon v. Local 2944, 683 F.2d 590, 594-95 ___ ______ __________ (1st Cir. 1982) (stating that "[a] union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" collectively comprise a field in which "the policy of the law is so dominated by the sweep of federal statutes that legal relations which [those rights and duties] affect must be deemed governed by federal law having its source in those statutes, rather than by local law") (citation and internal quotation marks omitted). B. Standard of Review. B. Standard of Review. __________________ Although the parties gloss over the point, we emphasize that the only appealable order that the district court entered during the short life of this case is the order denying the plaintiffs' motion to remand. The denial of a motion to remand a removed case to the state court involves a question of federal subject matter jurisdiction and thus engenders de novo review. See Rivet v. Regions Bank, 108 F.3d 576, 582 (5th Cir.), cert. ___ _____ ____________ _____ granted on other grounds, 118 S. Ct. 31 (1997); County of St. _______ __ _____ _______ _____________ Charles v. Missouri Family Health Council, 107 F.3d 682, 684 (8th _______ ______________________________ Cir.), cert. denied, 118 S. Ct. 160 (1997). _____ ______ In this instance, the Union effected removal under 28 11 U.S.C. 1441(b) (permitting the removal of civil actions over which United States District Courts have original federal question jurisdiction). Hence, our review must focus on "whether the federal district court would have had original jurisdiction of the case had it been filed in that court." Grubbs v. General ______ _______ Elec. Credit Corp., 405 U.S. 699, 702 (1972); accord Chicago v. __________________ ______ _______ International College of Surgeons, 66 U.S.L.W. 4041, 4043 (U.S. __________________________________ Dec. 15, 1997). In the course of this inquiry, the removing party bears the burden of persuasion vis- -vis the existence of federal jurisdiction. See Dukes v. U.S. Healthcare, Inc., 57 ___ _____ ______________________ F.3d 350, 359 (3d Cir. 1995). C. Federal Question Jurisdiction. C. Federal Question Jurisdiction. _____________________________ Federal district courts have original jurisdiction over "federal question" cases that is, cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. 1331. The gates of federal question jurisdiction are customarily patrolled by a steely-eyed sentry the "well-pleaded complaint rule" which, in general, prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint. See International College of ___ ________________________ Surgeons, 66 U.S.L.W. at 4043; Gully v. First Nat'l Bank, 299 ________ _____ _________________ U.S. 109, 113 (1936). At first blush, this rule appears to augur well for the plaintiffs, who maintain that their complaint alleges only state-law claims. Appearances, however, often are deceiving. Whereas preemption by federal law is a defense that 12 ordinarily does not give rise to federal question jurisdiction, see Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987), ___ _________________ ________ "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character," Metropolitan Life Ins. Co. v. __________________________ Taylor, 481 U.S. 58, 63-64 (1987). Section 301 preemption ______ operates in this way. No less an authority than the Supreme Court has declared that "the pre-emptive force of 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Board v. Construction Laborers ____________________ _____________________ Vacation Trust, 463 U.S. 1, 23 (1983) (citation and internal _______________ quotation marks omitted). The upshot is that any such suit must be regarded as "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of 301." Id. ___ This powerful preemption principle propels a significant exception to the well-pleaded complaint rule the artful pleading doctrine. The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly. See Federated Dep't Stores, Inc. ___ ____________________________ v. Moitie, 452 U.S. 394, 397 n.2 (1981) (explaining that in an ______ appropriate case "the removal court will seek to determine whether the real nature of the claim is federal, regardless of 13 plaintiff's characterization") (quoting 14 Wright, Miller, & Cooper, Federal Practice and Procedure 3722 at 564-66 (1976)). ______________________________ In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum. See Milne Employees Ass'n v. Sun Carriers, Inc., 960 F.2d ___ _____________________ __________________ 1401, 1406 (9th Cir. 1992) (discussing the artful pleading doctrine in the context of section 301 preemption). If the claim appears to be federal in nature that is, if it meets the applicable test for one that arises under federal law then the federal court must recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state-law claims. See Metropolitan Life, ___ _________________ 481 U.S. at 64. In this respect, we believe that DFR preemption operates in much the same fashion as section 301 preemption. While we have not heretofore inquired whether DFR preemption, like section 301 preemption, works an exception to the well- pleaded complaint rule, the answer seems obvious. Because federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit, see Vaca, 386 U.S. at 183, and because this ___ ____ manifestation of congressional will so closely parallels Congress's intentions with regard to section 301, see Avco Corp. ___ __________ v. Aero Lodge No. 735, 390 U.S. 557, 561-62 (1968) (citing ____________________ Lincoln Mills, 353 U.S. at 457), we hold that a district court _____________ possesses federal question jurisdiction when a complaint, though 14 garbed in state-law raiment, sufficiently asserts a claim implicating the duty of fair representation. We also hold, as a logical corollary, that DFR preemption warrants resort to the artful pleading doctrine. Accord Richardson v. United ______ __________ ______ Steelworkers, 864 F.2d 1162, 1169 (5th Cir. 1989) ("We hold that ____________ where the NLRA federal law duty of fair representation, actionable in federal court, preempts a state-law claim, the suit asserting such a claim . . . may be removed to federal court just as the suit asserting state law claims preempted by section 301 . . . may be removed under Avco and its progeny."). ____ V. THE LITMUS TEST  V. THE LITMUS TEST The foregoing articulations of complete preemption, the standard of review, and the artful pleading doctrine are helpful, but they do not tell us how certain a court must be that an artfully pleaded complaint contains a federal question before denying a motion to remand. Although our research has not revealed any ready-made solution to this dilemma, we conclude that the artful pleading doctrine permits a district court to recharacterize a putative state-law claim as a federal claim when a review of the complaint, taken in context, reveals a colorable federal question within a field in which state law is completely preempted. We summarize the reasoning that undergirds this conclusion. As a matter of common practice, a district court confronted with a question of subject matter jurisdiction reviews 15 a plaintiff's complaint not to judge the merits, but to determine whether the court has the authority to proceed. When conducting this inquiry, the court only asks whether the complaint, on its face, asserts a colorable federal claim. See Aldinger v. Howard, ___ ________ ______ 427 U.S. 1, 7 (1976) ("[W]here federal jurisdiction is properly based on a colorable federal claim, the court has the right to decide all the questions in the case . . . .") (citation and internal quotation marks omitted); Northeast Erectors Assoc. v. _________________________ Secretary of Labor, 62 F.3d 37, 39 n.1 (1st Cir. 1995) (observing __________________ that "federal question jurisdiction exists once the plaintiff has alleged even a colorable federal claim"). As colorability is the litmus test for the existence vel non of federal question ___ ___ jurisdiction, we see no reason why a court should not apply precisely the same standard when called upon to determine whether a complaint demands recharacterization under the artful pleading doctrine. Indeed, because the critical inquiry when reviewing the denial of a motion to remand is "whether the federal district court would have had original jurisdiction of the case had it been filed in that court," Grubbs, 405 U.S. at 702, the use of ______ any other standard would be incongruous.4  ____________________ 4Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175 _____ _________________________________ (1909), is not to the contrary. Though the Siler Court stated in _____ dictum that "the Federal question must not be merely colorable or fraudulently set up for the mere purpose of endeavoring to give the court jurisdiction," id. at 191-92, the Court used the word ___ "colorable" in a different sense than we do today. "Colorable" has two definitions: it may mean "seemingly valid or genuine," or it may mean "intended to deceive." Webster's New Collegiate ________________________ Dictionary 220 (1981). The Siler Court unquestionably used the __________ _____ word in the latter sense, in a discussion about spurious claims. See Siler, 213 U.S. at 191-92; compare Penn Mut. Life Ins. Co. v. ___ _____ _______ _______________________ 16 This formulation is reinforced by the principles articulated in Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804 ________________________ ________ (1986). There, the Supreme Court stressed that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810. Employing the colorability standard soothes such ___ sensitivities, for where there is complete preemption, there necessarily has been a triad of judicial determinations: that Congress intended federal law to occupy the whole of a regulatory field; that federal judicial power properly extends to actions originally filed in state courts to the extent that they touch upon that field; and that the exercise of such federal power does not offend principles of federalism. See Franchise Tax Board, ___ ___________________ 463 U.S. at 23. VI. THE MERITS VI. THE MERITS Having fashioned the standard by which we must gauge the propriety of removal and remand, we conclude without serious question that the instant complaint reveals a colorable question of federal law and that, therefore, the district court did not err when it denied the motion to remand. We start with the plaintiffs' negligence claim and its relationship to section 301 of the LMRA. This claim can survive Rawson-based preemption under section 301 only if the Union acted ______  ____________________ Austin, 168 U.S. 685, 695 (1898) (noting appellate jurisdiction ______ wherever there is a claim that a state law contravenes the Constitution, as long as the claim is "real and colorable, not fictitious and fraudulent"). We use the word in the "seemingly valid or genuine" sense. 17 "in a way that might violate the duty of reasonable care owed to every person in society." Rawson, 495 U.S. at 371. The claim ______ asserts that, during the recruitment interviews, the Union breached its duty of care to the interviewees. At oral argument, counsel for BIW Deceived gave this a gloss, acknowledging that the Union participated in the interview process pursuant to the CBA. This being so, it is plausible (indeed, likely) that the CBA details the nature and limits of the Union's participation in the interview process and that the Union, therefore, would have had a duty of care separate from any duty owed by third parties. So viewed, the Union stands accused of violating a duty of care that flowed to it pursuant to the CBA, and the plaintiffs' state- law negligence claim, when recharacterized, passes the colorability test. It is thus arguably preempted. See Rawson, ___ ______ 495 U.S. 371-72 ("Pre-emption by federal law cannot be avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort."). Even were we to assume for argument's sake that the plaintiffs' negligence claim, so recharacterized in light of section 301, does not raise a colorable federal claim, we still would be bound to affirm the district court's denial of remand on the ground that the claim also is arguably preempted via the duty of fair representation. The fact that the plaintiffs were not members of the Union at the time the statements were made does 18 not command a contrary conclusion for a union owes a duty of fair representation to nonmembers whom it has undertaken constructively to represent. See, e.g., Steele v. Louisville & ___ ____ ______ ____________ Nashville R.R. Co., 323 U.S. 192, 204 (1944); Nedd v. United Mine __________________ ____ ___________ Workers, 556 F.2d 190, 200 (3d Cir. 1977); Amalgamated Transit _______ ___________________ Union Div. 822, 305 N.L.R.B. 946, 949-50 (1991). Here, taking _______________ the facts as limned by the plaintiffs, the Union plainly acted in a representational capacity during the recruitment process. Indeed, the plaintiffs, in their complaint, speak of the "special relationship" that existed between them and the Union, and their theory of the case seemingly hinges on their ability to establish a symbiotic relationship of advocacy and dependence at the time of the interviews. Under these circumstances, the negligence claim, when recharacterized, sufficiently resembles a DFR claim to pass the colorability test and thus support the exercise of federal question jurisdiction. Let us be perfectly clear. Because of the nearly empty record, we cannot say with certitude whether we would find ultimately that federal preemption applies in the instant case. At this stage of the proceedings, however, we need not go that far; to uphold the district court's exercise of federal question jurisdiction, we need only conclude that, despite the plaintiffs' state-law stylings, the complaint articulates at least one colorable federal claim. Properly recharacterized, the plaintiffs' complaint falls into this category. To this point, we have trained our sights on the 19 negligence claim. While we believe that, for the most part, the other claims contained in the plaintiffs' complaint similarly state claims that, when recharacterized, are colorably federal in nature, we need not probe the point too deeply. A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts. See ___ 28 U.S.C. 1367(a); see also International College of Surgeons, ___ ____ _________________________________ 66 U.S.L.W. at 4043-44; Roche v. John Hancock Mut. Life Ins. Co., _____ _______________________________ 81 F.3d 249, 256 (1st Cir. 1996). Therefore, removal was appropriate. VII. CONCLUSION VII. CONCLUSION We need go no further. For the reasons stated herein, we conclude in the course of de novo review that the district court correctly exercised federal question jurisdiction when it denied the plaintiffs' motion to remand. Consequently, the judgment to which the plaintiffs consented must stand. Affirmed. Affirmed. ________ 20