USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1754

 PAMELA DANCA, JOSEPH DANCA, JR., KATELYN J. DANCA
 AND LISA A. DANCA,
 
 Plaintiff, Appellants,
 
 v.
 
 PRIVATE HEALTH CARE SYSTEMS, INC.,
 AND PHOENIX HOME LIFE MUTUAL INSURANCE CO.,
 
 Defendants, Appellees.
 
 
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. Patti B. Saris, U.S. District Judge]
 
 
 
 Before
 
 Stahl, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lipez, Circuit Judge.
 
 
 
 
 Leonard F. Zandrow, Jr., with whom John W. Brister and Brister
& Zandrow, L.L.P. were on brief, for appellants.
 Nicholas P. Hansen, with whom Van Aaron Hughes and Ireland,
Stapleton, Pryor & Pascoe, P.C. were on brief, for Private
Healthcare Systems, Inc.
 Albert Zakarian, with whom Day, Berry & Howard LLP was on
brief, for Phoenix Home Life Mutual Insurance Company.

August 2, 1999

 
 

 STAHL, Circuit Judge. In this difficult case, plaintiffs
Pamela Danca and members of her family (collectively, plaintiffs)
seek to hold defendants-appellees Phoenix Home Life Mutual
Insurance Company (Phoenix) and Private Healthcare Systems Inc.
(PHSI) responsible for allegedly negligent medical decisionmaking
in the course of a precertification requirement apparently mandated
by an ERISA-governed health plan. After careful consideration, we
affirm the decision of the district court that the state law claims
be dismissed.
 I.
 Introduction
 Because the record is largely undeveloped, we cull our
factual recitation from the district court's opinion and the
appellate briefs, as supplemented by the state court complaint.
 Pamela Danca is a beneficiary of a health insurance
policy governed by the Employee Retirement Income Security Act
(ERISA), 29 U.S.C. 1001 et seq. Phoenix is the insurance company
that provided the policy and PHSI is the utilization review firm
hired by Phoenix to assess physicians' recommendations for a
proposed course of medical treatment for plan beneficiaries. Such
assessments, called precertification or prospective utilization
review, are apparently required by the terms of the ERISA plan. 
According to defendants, failure to obtain precertification may
result in reduced payment (or no payment at all) for the services
for which precertification should have been sought. In such an
event, the beneficiary would be liable for the cost of the
treatment.
 Danca, who had a long history of mental illness that had
been treated on occasions prior to those in dispute here, sought
care for a new episode of mental illness on September 21, 1994. 
Her physician recommended inpatient psychiatric care at McLean
Hospital. His recommendation was apparently based on the fact that
Danca had previously been successfully treated at McLean. After
consultation with the physician regarding this recommendation and
its rationale, defendants denied precertification for treatment at
McLean and instead precertified Danca's admission to Emerson
Hospital.
 The precise nature of the consultation and the extent of
defendants' participation in the medical decisionmaking is not
clear on the record before us. Typically, utilization review firms
have a set of guidelines and protocols that guide such
decisionmaking, see Andrews-Clarke v. Travelers Ins. Co., 984 F.
Supp. 49, 50 n.9 (D. Mass. 1997), and we therefore assume that was
probably the case here. Thus, it appears that defendants decided,
in light of Danca's medical record and after some consultation with
her treating physician, that Emerson Hospital was appropriate for
her condition.
 According to plaintiffs, Emerson Hospital turned out to
be inappropriate and provided Danca with inadequate care. Among
other things, plaintiffs claim that Emerson failed to provide
treatment similar to that which had proven helpful at McLean
Hospital for earlier episodes of her mental illness. Danca
subsequently required additional hospitalization. She was treated
at a third facility, where the care was also alleged to have been
inadequate. Danca, allegedly as a result of the totality of her
inadequate care, attempted suicide by self-immolation, causing
severe burns and permanent disfiguring injuries.
 Plaintiffs filed suit in Massachusetts Superior Court
against numerous physicians and the health care facilities at which
they allege Danca was inadequately treated. Plaintiffs also filed
suit against Phoenix and PHSI.
 Plaintiffs amended the complaint once in the state court. 
The amended complaint alleged a number of ways in which the actions
or inactions of defendants resulted in Danca's injuries. 
Defendants removed the suit to federal district court, claiming
federal question jurisdiction. Plaintiffs never challenged the
removal on jurisdictional grounds and the district court apparently
accepted the removal as proper. 
 Plaintiffs subsequently amended the complaint again. 
Phoenix and PHSI then moved to dismiss the state law claims against
them, asserting that the claims were preempted by ERISA. See 29
U.S.C. 1144(a), ERISA 514 (ERISA "shall supersede any and all
State laws insofar as they may now or hereafter relate to any
employee benefit plan.") (hereinafter, "ERISA 514 Preemption"). 
The district court agreed and dismissed these claims. After
further procedural machinations unimportant for the purpose of this
opinion, Danca filed a timely notice of appeal from the order of
dismissal.
 II.
 Jurisdiction of the District Court
 A threshold issue in this case, as in every case, is
subject matter jurisdiction. Because of the importance of the
issue, and because the district court apparently did not directly
address the question, we review it at some length. Our focus is on
the doctrine of complete preemption, which controls the question of
subject matter jurisdiction. We find the case was properly removed
to the district court.
 Under our dual-sovereign system, the plaintiff is the
"master to decide what law he will rely upon." Fair v. Kohler Die
& Specialty Co., 228 U.S. 22, 25 (1913). Plaintiff has the
prerogative to rely on state law alone although both federal and
state law may provide a cause of action. See Caterpillar Inc. v.
Williams, 482 U.S. 386, 392 (1987). Nevertheless, within thirty
days of receipt of proper service of the complaint and summons, see
Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., __ U.S. __,
119 S. Ct. 1322, 1328-30 (1999), defendants may remove an action
from the state court in which it was filed to the appropriate
federal district court, provided that the defendant can show some
basis for federal jurisdiction, see 28 U.S.C. 1441(a) & 1446(a). 
 The removal statute does not in itself create
jurisdiction. Indeed, removal statutes are strictly construed, see
Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941),
and defendants have the burden of showing the federal court's
jurisdiction, see BIW Deceived v. Local S6, Industrial Union of
Marine and Shipbuilding Workers of America, IAMAW District Lodge 4,
132 F.3d 824, 831 (1st Cir. 1997). Defendants here claim federal
question jurisdiction as the basis for removal. See 28 U.S.C. 
1446(a) & 1331. Defendants must therefore make a "colorable"
showing that a basis for federal jurisdiction exists. BIW
Deceived, 132 F.3d at 832; see also Burns v. Windsor Ins. Co., 31
F.3d 1092, 1097 (11th Cir. 1994) (remanding where federal
jurisdiction not clearly shown). 
 Jurisdiction is normally ascertained from the face of the
state court complaint that triggered the removal. See Franchise
Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10
(1983) (describing the "well-pleaded complaint" rule). Here, the
state court complaint alleged only causes of action under state
law. On its face, then, the complaint presents no federal
question.
 But there is an exception to this practice of focusing on
the face of the complaint. Where a claim, though couched in the
language of state law, implicates an area of federal law for which
Congress intended a particularly powerful preemptive sweep, the
cause is deemed federal no matter how pleaded. See Metropolitan
Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). This exception
to the well-pleaded complaint rule is called "complete preemption."
 We pause here to emphasize the difference between
complete preemption, a concept associated with jurisdiction, and
the affirmative federal defense of ERISA 514 preemption. 
Standing alone, the likelihood or even certainty of defendants'
raising a colorable ERISA 514 preemption defense is no basis for
federal jurisdiction. See Taylor, 481 U.S. at 64 ("ERISA
preemption, without more, does not convert a state law claim into
an action arising under federal law."). ERISA 514 is not
relevant to the complete preemption analysis; courts look instead
only to ERISA 502(a), see Jass v. Prudential Health Care Plan, 88
F.3d 1482 (7th Cir. 1996) (referring to 502 and not 514 for
complete preemption analysis); Dukes v. U.S. Healthcare, Inc., 57
F.3d 350 (3d Cir. 1995) (same); Lupo v. Human Affairs Int'l, Inc.,
28 F.3d 269 (2d Cir. 1994) (same); Tolton v. American Biodyne,
Inc., 48 F.3d 937 (6th Cir. 1995) (same), which contains ERISA's
exclusive civil enforcement provisions, see 29 U.S.C. 1132(a). 
 To establish complete preemption, defendants must show
that the state cause of action falls within the scope of ERISA
 502(a). See Taylor, 481 U.S. at 66. For this to occur, the
state law must be properly characterized as an "alternative
enforcement mechanism" of ERISA 502(a) or of the terms of an
ERISA plan. See New York State Conf. of Blue Cross & Blue Shield
Plans v. Travelers Ins. Co., 514 U.S. 645, 658 (1995). ERISA 
502(a) provides for, inter alia, a cause of action by a participant
or beneficiary "to recover benefits due . . . under the terms of
the plan, to enforce . . . rights under the terms of the plan, or
to clarify . . . rights to future benefits under the terms of the
plan." 29 U.S.C. 1132(a)(1)(B). It therefore follows that state
law tort suits that allege the improper processing of a claim for
benefits under an ERISA-covered plan, for example, fall within the
scope of 502(a). See Pilot Life Ins. Co. v. Dedeaux, 481 U.S.
41, 56 (1987). But "Section 502(a) . . . does not purport to reach
every question relating to plans covered by ERISA." Franchise Tax
Bd., 463 U.S. at 25. We must therefore look beyond the face of the
complaint "to determine whether the real nature of the claim is
federal, regardless of plaintiff's [state law] characterization." 
Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2
(1981). 
 Although we recognize that the allegedly negligent
decisionmaking and consultation at issue here may be characterized
as medical in nature, this fact alone does not remove the state
causes of actions from the scope of 502(a). Nor does the fact
that the allegedly negligent conduct was not in itself a final
"benefits" determination, but only part of a precertification
decision, control. See Terry v. Bayer Corp., 145 F.3d 28, 35 (1st
Cir. 1998) (when examining an ERISA 502(a) claim, "[w]e must
focus . . . in the usual case . . . on the determinations of the
final decisionmaker [not the third-party administrator hired to
evaluate medical basis of treatment requests]."). What matters, in
our view, is that the conduct was indisputably part of the process
used to assess a participant's claim for a benefit payment under
the plan. As such, any state-law-based attack on this conduct
would amount to an "alternative enforcement mechanism" to ERISA's
civil enforcement provisions contained in ERISA 502(a), 29 U.S.C.
 1132(a), because "all suits brought by beneficiaries or
participants asserting improper processing of claims under ERISA-
regulated plans [should] be treated as federal questions governed
by 502(a)." Pilot Life, 481 U.S. at 56. Pilot Life, for
example, involved repeated terminations and reinstatements of
disability benefits over the course of five years. Id. at 43. 
Plaintiffs in that case alleged not simply an entitlement to
benefits under the plan, but bad faith on the part of the insurance
company in its conduct while arriving at its final benefits
conclusions. Id. at 48. Plaintiffs' claims here similarly attack
the conduct -- albeit conduct that is quasi-medical in nature -- of
the defendants in the course of processing a claim for benefits. 
We therefore find that defendants have made a colorable showing
that plaintiffs' claims, particularly the allegations that
defendants (1) failed to follow Danca's physician's recommendations
and (2) failed to ensure that the evaluation of treatment requests
in the course of precertification were made and overseen by capable
personnel in a competent manner, are alternative enforcement
mechanisms under ERISA 502(a) and therefore completely preempted. 
See Jass, 88 F.3d at 1489; see also Taylor, 481 U.S. at 66. They
thus raise a federal question justifying removal. See 28 U.S.C. 
1441.
 III.
 Jurisdiction on Appeal
 Although plaintiffs filed the notice of appeal in this
case, they now contest our jurisdiction. Plaintiffs hope that, if
we stay the appeal until the state court has resolved the claims
against the hospital and physician defendants, the law will have
changed in their favor in the interim. At oral argument,
plaintiffs' position proved not to be "jurisdictional" at all. 
Rather, it boiled down to this: that this court may exercise its
discretion to stay this appeal pending the outcome of the state
case. Even assuming plaintiffs' view on the law were correct, we
would not exercise our discretion in this manner.
 IV.
 ERISA 514 Preemption
 ERISA preempts all state laws that "relate to" employee
welfare benefit plans. See 29 U.S.C. 1144(a). In its recent
cases, the Supreme Court has made clear that ERISA preempts, inter
alia, two kinds of state laws: (1) laws that amount to "alternative
enforcement mechanisms" to those in ERISA 502(a), see New York
State Conference of Blue Cross & Blue Shield Plans v. Travelers
Ins. Co., 514 U.S. 645, 658 (1995) (citing Ingersoll-Rand Co. v.
McClendon, 498 U.S. 133 (1990)); and (2) laws that present the
threat of conflicting and inconsistent regulation that would
frustrate uniform national administration of ERISA plans, see id.
at 656-58.
 As we stated in our discussion of complete preemption,
supra Part II, we find that the tort claims alleging negligence in
defendants' (1) failing to follow Danca's physician's
recommendations and (2) failing to ensure that the evaluation of
treatment requests in the course of precertification were made and
overseen by capable personnel in a competent manner, are
alternative enforcement mechanisms under ERISA 502(a). As such,
they are both completely preempted, justifying removal, and
preempted by ERISA 514, justifying dismissal. See Travelers, 514
U.S. at 658. 
 The remaining counts against defendants allege negligence
in the supervision and training of the personnel responsible for
precertification, and negligent infliction of emotional distress. 
We take no position on whether these claims, too, constitute
"alternative enforcement mechanisms," because we find that they
indisputably create a threat of conflicting and inconsistent state
and local regulation of the administration of ERISA plans. See id.
at 656-58 (noting that "the basic thrust of the preemption clause,
then, was to avoid a multiplicity of regulation in order to permit
the nationally uniform administration of employee benefit plans"). 
Different states could apply different standards for what
constitutes a negligent precertification training or supervisory
practice. This in turn could affect how defendants carry out their
claims assessment duties, by requiring different administrative
procedures in different jurisdictions. The preemption clause was
designed to avoid precisely such a result. See, e.g., FMC Corp. v.
Holliday, 498 U.S. 52, 60 (1990) (calling for preemption to avoid
"patchwork" regulation and inefficient benefit programs); Shaw v.
Delta Air Lines, Inc., 463 U.S. 85, 99-100 (finding law preempted
because it introduced threat of conflicting state law that would
increase administrative burden on plan administrators); see also
120 Cong. Rec. 29197 (1974) (describing preemption as the "crowning
achievement" of ERISA and stating that its purpose is to
"eliminat[e] the threat of conflicting and inconsistent State and
local regulation") (statement of co-sponsor Rep. Dent).
 V.
 Conclusion
 We conclude that ERISA 514 preempts the state tort
claims leveled in this case against these defendants. The decision
of the district court is therefore affirmed.