# United States Court of Appeals
## For the First Circuit

No. 13-1417

RAQUEL LÓPEZ-MUÑOZ AND ORLANDO RÍOS-WALKER,

Plaintiffs, Appellants,

v.

TRIPLE-S SALUD, INC.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before

Howard, Selya and Lipez,

Circuit Judges.

---

José Vázquez García for appellants.
Cesar T. Alcover, with whom Casellas Alcover & Burgos, P.S.C.
was on brief, for appellee.

---

May 9, 2014

---

**SELYA, Circuit Judge.** In this matter of first impression within our circuit, we confront the question of whether the Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. §§ 8901-8914, completely preempts local-law tort and contract claims arising out of a refusal by an FEHBA insurer to cover a medical procedure. Concluding that complete preemption does not exist, we reverse the orders appealed from and direct the district court to remand the action to the Puerto Rico Court of First Instance.

## I. BACKGROUND

In 2009, physicians diagnosed plaintiff-appellant Raquel López-Muñoz with morbid obesity and recommended that she undergo gastric lap band surgery. Defendant-appellee Triple-S Salud, Inc., a health-care insurer that covered the plaintiff by virtue of her husband's employment with the federal government, initially denied authorization for the surgery. The plaintiff eventually persuaded the defendant to reconsider its refusal and scheduled the procedure for October 27, 2009.

Despite the plaintiff's confidence that her path had been cleared, obstacles loomed. The defendant voiced newfound objections to the cost of the lap band and the anesthesiologist's fees. During the next month, the plaintiff unsuccessfully attempted to quell these objections.

In due course, the plaintiff repaired to the Puerto Rico Court of First Instance and brought tort and breach of contract

claims for damages against the defendant.[1]  The defendant removed the action to the federal district court.

The notice of removal recited two grounds.  First, it asserted that the FEHBA completely preempted the plaintiff's local-law claims, transmogrifying them into federal questions and conferring original jurisdiction upon the federal court.  See 28 U.S.C. §§ 1331, 1441(a).  Second, it asserted that the defendant was acting under the direction of a federal officer, thus warranting removal.  See id. § 1442(a)(1).

The plaintiff balked.  She challenged the propriety of the removal and entreated the district court to remand the case to the Court of First Instance.  The defendant meantime moved to dismiss the case, arguing that the FEHBA demanded (and the plaintiff had not pursued) exhaustion of administrative remedies.

The district court denied the plaintiff's motion to remand.  It held that the FEHBA completely preempted the plaintiff's claims and, thus, federal jurisdiction attached.  See id. § 1331.  The court proceeded to dismiss the action without prejudice for failure of the plaintiff to exhaust administrative remedies.  This timely appeal ensued.

---

[1] The plaintiff's husband joined her in the suit.  Because his rights are wholly derivative of hers, we refer throughout to the plaintiff in the singular.

## II.  ANALYSIS

We start with an overview of the pertinent provisions of the FEHBA and the implementing regulations.  The FEHBA "establishes a comprehensive program of health insurance for federal employees" and family members covered under their plans.  Empire HealthChoice Assur., Inc. v. McVeigh, 547 U.S. 677, 682 (2006); see 5 U.S.C. § 8905(a)(3).  Premiums shared by enrollees and the federal government fund the program.  See 5 U.S.C. §§ 8906(b)-(c), 8909(a).  A panoply of health-care offerings is constructed through negotiation: the federal Office of Personnel Management (OPM) contracts with private insurers to provide and administer particular plans.  See id. § 8902(a)-(d).

The FEHBA itself does not delineate specific procedures for resolving denial-of-benefits disputes.  Instead, it grants OPM authority to prescribe necessary regulations.  See id. § 8913(a).

In pursuance of this authority, OPM promulgated a regulation that dictated, among other things, that denial-of-benefits disputes under FEHBA plans must pass through an administrative review process prior to any resort to the courts. See 5 C.F.R. § 890.107(d)(1); Federal Employees Health Benefits Program: Filing Claims, 61 Fed. Reg. 15,177, 15,179 (Apr. 5, 1996). The same regulation specified that OPM, not any private insurer, must be named as the defendant in any court suit seeking judicial review of a denial of benefits.  See 5 C.F.R. § 890.107(c); Federal

-4-

Employees Health Benefits Program: Filing Claims, 61 Fed. Reg. at 15,179. The mechanics of the judicial review process are governed by the general statutory framework of the Administrative Procedure Act, 5 U.S.C. §§ 701-706. See, e.g., Muratore v. U.S. OPM, 222 F.3d 918, 920 (11th Cir. 2000).

The FEHBA contains a preemption clause, which explicitly provides: "The terms of any contract [issued] under [the FEHBA] which relate to the nature, provision, or extent of coverage or benefits . . . shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1).

Against this backdrop, we turn to the plaintiff's claims. The parties agree that the defendant's policy was issued under, and is subject to, the terms of the FEHBA. Here, however, the plaintiff insists that her claims are local-law claims for damages, not claims that seek to reverse an insurer's refusal either to authorize or pay for certain medical procedures. In her appeal, she challenges both the district court's denial of her motion to remand and its subsequent dismissal of her suit.

At the heart of the plaintiff's asseverational array lies her contention that her case was not properly removable. Our appraisal of the denial of her motion to remand depends, of course, on whether federal jurisdiction exists. See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbldg. Workers, 132 F.3d 824, 830

(1st Cir. 1997).  This inquiry is cabined by the notice of removal.

See, e.g., Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1012 n.4

(11th Cir. 2003).  While the defendant cited the federal officer

removal statute, 28 U.S.C. § 1442(a)(1), in the notice, it made no

effort to defend removal on that ground either in its opposition to

the plaintiff's motion to remand or in its appellate briefing.

Consequently, that putative ground for removal is waived.[2]  See

Viqueira v. First Bank, 140 F.3d 12, 16 n.2 (1st Cir. 1998).

Eliminating the federal officer removal statute means

that the propriety of removal in this case hinges on whether the

district court had original jurisdiction over the matter.  See 28

U.S.C. § 1441(a).  When, as now, there is neither diversity of

citizenship  nor any other special basis for jurisdiction, the

question reduces to the existence vel non of federal question

jurisdiction.  See Franchise Tax Bd. v. Constr. Laborers Vacation

Trust, 463 U.S. 1, 8 (1983).  A federal question exists when the

action is one "arising under the Constitution, laws, or treaties of

the United States."  28 U.S.C. § 1331.

---

[2] We note in passing that the waived issue anent the federal officer removal statute is of considerable interest in the context of the FEHBA.  See, e.g., Jacks v. Meridian Res. Co., 701 F.3d 1224, 1230-35 (8th Cir. 2012); Pollitt v. Health Care Serv. Corp., 558 F.3d 615, 616-17 (7th Cir.) (per curiam), cert. granted, 558 U.S. 945 (2009), and cert. dismissed, 559 U.S. 965 (2010).  But courts have no roving writ to grapple with purely academic questions.  See, e.g., Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 32 (1st Cir. 2007).  An interesting question, not fairly presented in the litigation, normally does not warrant judicial attention.

The "arising under" analysis is informed by the well-pleaded complaint rule, which "requires the federal question to be stated on the face of the plaintiff's well-pleaded complaint." R.I. Fishermen's All., Inc. v. R.I. Dep't of Envtl. Mgmt., 585 F.3d 42, 48 (1st Cir. 2009); accord Franchise Tax Bd., 463 U.S. at 9-10. As a general matter, this rule envisions "that the plaintiff is master of his complaint and that a case cannot be removed if the complaint's allegations are premised only on local law." Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 6 (1st Cir. 2008). These principles normally govern when the defendant asserts that the plaintiff's local-law claims are preempted by federal law. See Franchise Tax Bd., 463 U.S. at 10, 14; Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

But the general rule that gives birth to these principles, like virtually every general rule, admits of exceptions. One such exception is embodied in the artful pleading doctrine, which is designed to prevent a plaintiff from unfairly placing a thumb on the jurisdictional scales. To this end, the artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented. See Rivet v. Regions Bank, 522 U.S. 470, 475 (1998); BIW Deceived, 132 F.3d at 831. When such a glimpse reveals that a federal statute entirely displaces the local-law causes of action pleaded in the complaint, a hidden core

of federal law sufficient to support federal jurisdiction emerges.
See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).  In
such a case, the plaintiff's claims are deemed "federal claims in
state law clothing and, to defeat artful pleading, the district
court can simply 'recharacterize' them to reveal their true basis."
Negrón-Fuentes, 532 F.3d at 6; see BIW Deceived, 132 F.3d at 831.

This jurisdiction-granting exception, known as complete
preemption, comprises a narrow exception to the well-pleaded
complaint rule.  See Beneficial Nat'l Bank, 539 U.S. at 5.  Despite
its name, complete preemption does not simply play übermensch to
the more commonplace defense of federal preemption.  The doctrine
of complete preemption is conceptually distinct from the doctrine
of ordinary (or defensive) preemption: the latter defends against
a plaintiff's local-law claims without any jurisdictional
ramifications, but the former clears a path — albeit one that is
rarely traversed successfully — into federal court.  See Fayard v.
Ne. Vehicle Servs., LLC, 533 F.3d 42, 45, 48 (1st Cir. 2008).

The linchpin of the complete preemption analysis is
whether Congress intended that federal law provide the exclusive
cause of action for the claims asserted by the plaintiff.  See
Beneficial Nat'l Bank, 539 U.S. at 9.  "The Supreme Court decisions
finding complete preemption share a common denominator: exclusive
federal regulation of the subject matter of the asserted state

-8-

claim, coupled with a federal cause of action for wrongs of the same type." Fayard, 533 F.3d at 46 (citations omitted).

With this short primer in place, we turn to the applicability of complete preemption here. This question engenders plenary review. See R.I. Fishermen's, 585 F.3d at 47. We hasten to add that we embark on this inquiry cognizant that federal courts are courts of limited jurisdiction and, thus, removal statutes are to be narrowly construed. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941).

In the case at hand, the district court found complete preemption and, as a consequence, denied the plaintiff's motion to remand. This finding rested on the FEHBA's preemption clause and OPM's regulations prescribing the administrative claims-review process. We do not think that these sources, either individually or collectively, can bear the weight of the district court's reasoning.

We need not linger long over the text of the preemption clause. In considering that very text, the Supreme Court explained that "[i]f Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear." Empire, 547 U.S. at 698. The Court concluded that "Congress has not done so [in the FEHBA]." Id. That four-square holding controls here: as the Empire Court explained, the

FEHBA's preemption clause simply "is not sufficiently broad to confer federal jurisdiction."  Id.

In an effort to dodge this bullet, the defendant labors to distinguish Empire.  It notes that Empire involves the subrogation claim of an FEHBA insurer against its insured, whereas the plaintiff's claims in this case are rooted in a denial of benefits and, thus, are more in tune with the language of the FEHBA's preemption clause.

This is true as far as it goes — even though the plaintiff is not suing to overturn a denial of benefits per se, her damages claims arise out of a denial of benefits — but it does not take the defendant very far.  After all, "the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the pre-emption defense but the intent of Congress."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).  Seen in this light, a stronger factual case for a defense based on the FEHBA's preemption clause does little to blunt Empire's treatment of that clause, because "even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction."  Id.

There is another reason why the defendant's counter-argument will not wash.  In connection with its holding that the FEHBA's preemption clause is insufficiently broad to confer federal jurisdiction, the Empire Court assumed that the clause "reache[d]" the subrogation claim at issue.  547 U.S. at 698.  This assumption

makes it transparently clear that the Empire Court's characterization of the preemption clause did not hinge in the slightest degree on how squarely the clause applied to the claims at issue. This, in turn, trumps the defendant's assertion that its case should be treated differently because the FEHBA's preemption clause applies more squarely here than in Empire.

Empire also stands in the way of the defendant's argument that a 1998 amendment to the FEHBA's preemption clause works a change in the jurisdictional calculus. The clause originally read:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

5 U.S.C. § 8902(m)(1) (1997). The amendment deleted the phrase "to the extent that such law or regulation is inconsistent with such contractual provisions." See Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366.

With respect to a jurisdictional inquiry (such as the one that this case demands), we cannot attach decretory significance to this amendment. The decision in Empire post-dated the amendment, and the Empire Court specifically discussed it. See 547 U.S. at 686. The Court nonetheless concluded that the FEHBA's preemption

-11-

clause, as amended, is not "a jurisdiction-conferring provision." Id. at 697. This conclusion is well-reasoned: although the amendment strengthened the preemption defense by including more local laws within the compass of the FEHBA's preemption clause, stronger defensive preemption does not, without more, translate into congressional intent to make a federal cause of action exclusive.[3] See, e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987).

So, too, the defendant's attempt to draw an analogy between the FEHBA and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 — one of the few federal laws that the Supreme Court has held to preempt state law completely, see Metro. Life Ins. Co., 481 U.S. at 66-67 — cannot evade Empire's precedential orbit. Analogies have their limits, and this one is flawed.

Although we have commented that the FEHBA's preemption clause "is nearly identical to ERISA's preemption provision,"

---

[3] To be sure, some courts have suggested that the amendment represented a reaction to earlier case law declining to find complete preemption under the FEHBA. See, e.g., Botsford v. Blue Cross & Blue Shield, 314 F.3d 390, 399 (9th Cir.), amended by 319 F.3d 1078 (9th Cir. 2002). But the legislative history of the amendment "provides only limited and equivocal support" for the proposition that it was intended to address jurisdictional issues. Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 149 n.16 (2d Cir. 2005) (Sotomayor, J.), aff'd, 547 U.S. 677 (2006). Thus, while the amendment "expand[s] the preemptive reach of FEHBA," the clause "remains a preemption clause, not a grant of federal jurisdiction." Id.

-12-

Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 299 n.2 (1st Cir. 2005), "nearly identical" does not mean "identical." The devil is in the detail and, once again, Empire is the beacon by which we must steer.

The Empire Court contrasted the FEHBA's preemption clause with ERISA's preemption provision and noted that the former, unlike the latter, "does not purport to render inoperative any and all state laws that in some way bear on federal employee-benefit plans." 547 U.S. at 698 (citing 29 U.S.C. § 1144(a)). The defendant's reliance on our dictum in Pharmaceutical Care Management withers in the face of the Supreme Court's specific consideration of the point.

This leaves the defendant's contention that the administrative claims-review framework evidences Congress's intent to create an exclusive federal cause of action for the relief sought here. This contention places particular emphasis on the confluence of the regulatory requirement that a proceeding for judicial review be brought against OPM rather than against the insurance carrier, see 5 C.F.R. § 890.107(c), and the FEHBA's grant of federal jurisdiction over FEHBA-based actions against the United States, see 5 U.S.C. § 8912. But even if we assume, favorably to the defendant, that an administrative claims process with concomitant judicial review can qualify as an exclusive federal

cause of action,[4] there is no sound basis for concluding that OPM's regulatory framework rises to this level.

The administrative framework as it now stands is of relatively recent vintage, and has been forged by OPM without any congressional involvement. Prior to 1996, OPM regulations required "a claim for health benefits" to "be brought against the carrier of the health benefits plan . . . not against OPM." 5 C.F.R. § 890.107 (1995). At that time, OPM did not regard "an enrollee's dispute of an OPM decision" as a challenge addressed to OPM itself where OPM's decision rested "solely" on its upholding of "a health plan carrier's denial of a claim." Id. With this in mind, OPM distanced itself from such disputes; they were to be fought out in the courts between the insured and the insurer. See, e.g., Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 312 (3d Cir. 1994) (noting that the FEHBA only provides for federal-court jurisdiction over actions against the United States, "[b]ut the United States is not a party to this action").

Perspectives change over time, and OPM's position evolved. In 1996, it shifted gears and promulgated a regulation that reflected the view that any challenge to a denial of benefits questioned OPM itself. OPM stated that because it "has the authority under the FEHB[A] to order the carrier to pay the claim,

_____

[4] This issue is by no means cut and dried. See Fayard, 533 F.3d at 47 n.5 (discussing, but not deciding, a conflict over whether non-judicial claims can trigger complete preemption).

OPM has determined it is appropriate under current statute for the covered individual to bring suit against OPM if OPM declines to order the carrier to pay the claim." Federal Employees Health Benefits Program: Filing Claims, 60 Fed. Reg. 16,037, 16,037 (Mar. 29, 1995) (interim regulations). This about-face transformed what had been civil actions between private parties into actions against a government agency, thus bringing judicial review of denial-of-benefits claims squarely into the orbit of the FEHBA's jurisdictional provision. See Federal Employees Health Benefits Program: Filing Claims, 61 Fed. Reg. at 15,179.

Given that the linchpin of an inquiry into the existence of complete preemption is Congress's intent about whether or not to create an exclusive federal cause of action, see Beneficial Nat'l Bank, 539 U.S. at 9, it would seem surpassingly strange to find complete preemption based not on congressional intent but, rather, on an administrative agency's interpretive about-face. We are unwilling to go down so curious a path. OPM's 1996 regulation, in and of itself, neither constituted congressional action nor implemented some statutory change. Consequently, the regulation is incapable of papering over the absence of any congressional intent to make claims that in any way relate to benefit denials exclusively federal. It reads too much into the current version of the administrative claims-review framework to say that, by some

mysterious alchemy, OPM managed to convert what historically had been less than complete preemption into complete preemption.

Our holding that the FEHBA does not completely preempt local law comports with the result in the only other post-Empire decision of a court of appeals. See Pollitt v. Health Care Serv. Corp., 558 F.3d 615, 616 (7th Cir.) (per curiam), cert. granted, 558 U.S. 945 (2009), and cert. dismissed, 559 U.S. 965 (2010). Although the defendant invites us to follow the contrary decision in Botsford v. Blue Cross & Blue Shield, 314 F.3d 390, 399 (9th Cir.), amended by 319 F.3d 1078 (9th Cir. 2002), we are constrained to decline its invitation. The Ninth Circuit decided Botsford without the benefit of the Supreme Court's decision in Empire, and its holding is no longer good law.

That ends this aspect of the matter. In light of the Empire Court's teachings and our examination of both the FEHBA preemption clause and the OPM regulatory framework, we hold that the FEHBA does not completely preempt local-law claims relating to the denial of benefits. Thus, the removal of this case to federal court cannot be justified on the basis of complete preemption.

We add a coda. We have recognized (although the defendant has not argued) another potential route to federal question jurisdiction, sometimes called the federal ingredient doctrine. This doctrine "applies in a 'special and small category of cases' where a 'state-law claim necessarily raise[s] a stated

-16-

federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" One & Ken Valley Hous. Grp. v. Me. State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013) (alteration in original) (quoting Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013)), cert. denied, 134 S. Ct. 986 (2014). In this case, an argument might be made that the claims at issue implicate this limited category of jurisdiction. But cf. Empire, 547 U.S. at 699-701 (finding no federal ingredient jurisdiction in subrogation claim against FEHBA insured).

Here, however, we need not probe this point. It is apodictic that "the removing party bears the burden of persuasion vis-à-vis the existence of federal jurisdiction," BIW Deceived, 132 F.3d at 831, and neither the defendant's notice of removal nor its briefs (either in this court or in the court below) attempt to carry that burden by resort to the federal ingredient doctrine. Any claim of federal ingredient jurisdiction is, therefore, waived. See Viqueira, 140 F.3d at 16 n.2; see also In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 590 n.8 (4th Cir. 2006).

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we conclude that the district court erred in holding that the FEHBA affords complete preemption. Therefore, the district court erred

-17-

in denying the motion to remand and its subsequent actions are of no effect.[5]

We reverse both the district court's judgment of dismissal and its order denying remand, and we remand the matter to the district court with instructions to remand the case to the Puerto Rico Court of First Instance for further proceedings.

**Reversed and remanded.**

---

[5] We take no view as to how the exhaustion of remedies defense may play out in the Puerto Rico courts. We hold only that because the district court lacked jurisdiction over the case, its resolution of that defense must be set aside.