[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15305
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cv-60209-WPD

JAMIE ORTIZ,

Plaintiff-Appellant,

versus

SCHOOL BOARD OF BROWARD COUNTY, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 11, 2019)

Before MARCUS, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Jamie Ortiz sued his employer, the School Board of Broward County,

Florida ("School Board"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-2(a)(1). Ortiz alleged that he was subjected to a hostile work environment and suspended without pay for five days based on his ethnicity and national origin (Hispanic/Puerto Rican). The district court granted summary judgment in favor of the School Board, and Ortiz appealed. After careful review, we vacate the grant of summary judgment in part because we conclude that Ortiz presented sufficient evidence that his work environment was objectively hostile. We affirm the grant of summary judgment as to the remaining claim.

## I.

Ortiz has worked for the School Board since 2000 in several capacities. From 2009 until late 2017, he worked as an auto mechanic in the central district garage under Michael Kriegel, his supervisor. To supplement his income, Ortiz also worked occasionally as an activity-bus driver—transporting students to and from after-school activities—from 2008 to 2014. Ortiz was working for the School Board as a carpenter as of January 2018.

Ortiz's claims against the School Board are twofold. First, he says that the School Board discriminated against him based on national origin when it suspended him without pay for five days in or around February 2014. The suspension stems from August 2013, when the School Board notified Ortiz that he was no longer eligible to work as an activity bus driver because he did not meet the requirements of the School Board's "Safe Driver's Plan." Ortiz checked his license records and

2

determined that his license was still valid, so he continued to work as an activity bus driver despite receiving this notice. After the School Board learned that Ortiz had disregarded its notice, it suspended him for five days without pay.

Ortiz's second claim is that he was subjected to a hostile work environment under Kriegel, his supervisor at the central district garage. This claim is based primarily on alleged offensive comments and harassment by Kriegel from 2012 through September 2014, when Ortiz filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Ortiz testified that Kriegel began harassing him as early as 2008, but the harassment intensified beginning in 2013. From then until September 2014, Kriegel made offensive comments and jokes every day about Puerto Ricans, Muslims, and black people. Kriegel made remarks like, "I'm around too many Puerto Ricans, I better carry my gun with me"; "we need to lock our toolboxes because we're hiring too many Puerto Ricans"; "this New York Puerto Rican is on me"; "Puerto Ricans like to do their own thing, they don't follow orders"; and "it ain't right you Puerto Ricans are making more money than me." Kriegel never used Ortiz's name and instead called him "Puerto Rican." Kriegel also used the ethnic slur "spic" "several times."

In addition to these comments, Ortiz testified about being harassed on the job by Kriegel. Ortiz stated that Kriegel harassed him "every day on any type of work

order."  Kriegel would wait for him to finish his bus route and say things like, "your Puerto Rican ass think you can do whatever you want to do."  Another time, Kriegel criticized Ortiz for using a certain bus and stated that he was "going to write your Puerto Rican ass up."  Ortiz objected to these and other comments, but Kriegel did not stop.  In December 2013, Kriegel accused Ortiz of falsifying maintenance records, which Ortiz denies.  The allegations were eventually dismissed, though Ortiz was transferred pending the investigation.  A few months later, Ortiz was in an office with Kriegel and Kriegel's supervisor, Tony Welsh, when Welsh told Ortiz that he had just "got rid of a dirty Puerto Rican" and that Ortiz was "next."

Ortiz's testimony was largely confirmed by several of his coworkers.  According to these coworkers, Kriegel used the terms "spic," "lazy spic," "knock-kneed spic," "dumb spic," and "wetback," either specifically about Ortiz or about Hispanic people more generally.  Kriegel also made other discriminatory comments, including "here comes the Puerto Rican gang, I need to call the cops"; "the damn Puerto Rican again, I've got to go see what this freakin' Puerto Rican is doing, they're all the same"; "I would rather have, you know, three more of these guys than a smelly Puerto Rican in here"; "spics come over here and they want to eat up all the benefits"; and "had a lot of niggers and spics apply, and we won't need no more of them here."  A small group of employees used similar terms openly on the workroom floor.  The coworkers reported the frequency of these comments as anywhere from

every day to every few months.  One coworker stated that he heard Kriegel make discriminatory comments about people of Hispanic origin on a daily basis.

According to the coworkers, Ortiz was present for some of these discriminatory comments, but not all of them.  One coworker reported hearing Kriegel make discriminatory comments in Ortiz's presence three to five times, though he was unsure if Kriegel had used the term "spic" in Ortiz's presence. Another stated that Ortiz may have been in earshot when Kriegel joked about calling the cops on a "Puerto Rican gang."  Others were unsure if Ortiz was present or did not believe Ortiz was present when they heard Kriegel make disparaging comments. At least two coworkers stated that Kriegel made the comments described above openly on the workroom floor, where Ortiz easily could have heard.

Further, Ortiz spoke with at least two coworkers about Kriegel's comments and harassment.  One of these coworkers, Robert Wetzel, testified that he accompanied Ortiz to complain to management about Kriegel's "racist remarks."  In that meeting, Ortiz specifically complained about Kriegel's calling him "spic" and saying that Hispanics were lazy.

In addition to pushing back against Kriegel, Ortiz complained several times to management about Kriegel's comments and actions.  Twice when Ortiz complained, the director of transportation stated that he would take care of it, but little changed over the long term.  Another time when Ortiz complained, joined by

5

Wetzel, the director told Ortiz that Kriegel "had a vendetta against [him]." The director stated that he would take care of it, but he told Ortiz, "Jaime, please, don't go any further than this." Ortiz did not file a formal internal complaint against Kriegel, though he was not aware of the policy for filing written complaints.

## II.

The district court granted summary judgment in favor of the School Board. First, it found that Ortiz had not met his burden to show that the School Board's legitimate, nondiscriminatory reason for suspending Ortiz—insubordination for continuing to drive a school bus after being told to stop—was pretextual. Second, it found that Kriegel's remarks about Ortiz's ethnicity or national origin were not frequent, severe, or threatening and did not affect Ortiz's job performance. Ortiz appeals both rulings.

## III.

We review *de novo* a district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014). Summary judgment is appropriate only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.*

Title VII makes it unlawful for employers to discriminate against an employee on the basis of race or national origin, among other protected characteristics. 42

U.S.C. § 2000e-2(a)(1).  A claim under this statutory section is referred to as a "disparate treatment" claim.  *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (*en banc*).  Disparate treatment claims take two forms: (1) "a tangible employment action, such as a firing or demotion" or (2) "a hostile work environment that changes the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned."  *Id.* (quotation marks omitted).  Ortiz proceeded in this case under both theories of disparate treatment, which we address separately below.

## A.

We begin with Ortiz's claim that he was discriminated against when the School Board suspended him for five days without pay.  Because Ortiz's claim is based on circumstantial evidence, we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1333 (11th Cir. 2015).

Under *McDonnell Douglas*, if the plaintiff presents a *prima facie* case of discrimination, and the defendant responds with a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then show that the defendant's reason was pretext for discrimination.  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  The pretext analysis concerns only

whether the employer's reason was motivated by discriminatory animus, not whether the decision was wise, prudent, or fair. *Id.* at 1266.

Here, the district court properly granted summary judgment on Ortiz's claim of discrimination based on his five-day suspension without pay. Ortiz has offered no evidence to contradict the School Board's contention that it suspended him because he drove a school bus after being told he was ineligible to do so. He claims that the School Board's reason was false because he had no points on his driver's license in the eyes of the state. But undisputed evidence reflects that the School Board calculated points differently than the state, and Ortiz has not shown that he was eligible under the School Board's policy. In any case, Ortiz concedes that he continued to drive buses after he was told he was ineligible to do so. So even if he's right about the points as a factual matter, he still disregarded the notice that he was not eligible to drive, which is a legitimate, non-discriminatory reason to impose the suspension. Accordingly, summary judgment was proper on this claim.

**B.**

As to Ortiz's claim of a hostile work environment, however, we conclude that summary judgment was not appropriate. Construing the record and drawing all reasonable inferences in Ortiz's favor, we must conclude that a reasonable jury could return a verdict for Ortiz.

8

To prove a hostile work environment in violation of Title VII, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted).

The requirement that the harassment be "severe or pervasive" contains an objective and a subjective component. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Id.* (quotation marks and ellipsis omitted). There is no dispute that Ortiz subjectively perceived the environment to be abusive, so we address the objective component only.

"In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* "Although these factors help guide the inquiry, the objective element is not subject to mathematical precision." *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1285 (11th Cir. 2018) (quotation marks omitted). We evaluate the factors in context and under the totality of the circumstances, and a weak or

insubstantial showing with regard to one factor is not necessarily fatal to a plaintiff's claim. *Miller*, 277 F.3d at 1276–77; *see Smelter*, 904 F.3d at 1286–87 ("[T]he Supreme Court has made clear that no single factor is required to establish the objective component." (quotation marks omitted)).

In this evaluation, we must bear in mind that "Title VII is not a federal civility code." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*) (quotation marks omitted). To be actionable, the conduct must be serious enough to alter to the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786–87 (1998). Evidence of "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" is insufficient. *Id.* at 787 (citation and quotation marks omitted). So too is "the sporadic use of abusive language" or other ordinary incidents of the workplace. *Id.* at 788 (quotation marks omitted). Nevertheless, because we look to the totality of the circumstances, we must "examine the conduct in context, not as isolated acts." *Mendoza*, 195 F.3d at 1246.

Here, a reasonable jury could conclude that Ortiz's workplace was objectively hostile to a reasonable person in his position. First, for nearly a two-year period preceding Ortiz's EEOC charge, the frequency of the harassment was daily or near daily. Ortiz reported that, from the beginning of 2013 through September of 2014,

10

Kriegel made offensive comments and jokes every day about Puerto Ricans.[1] Likewise, one of Ortiz's coworkers stated that he heard discriminatory comments by Kriegel about people of Hispanic origin on a daily basis during the same time period. Other coworkers reporting hearing discriminatory comments on a less frequent but still regular basis. This evidence is not consistent with the type of "isolated" or "sporadic" conduct that is insufficient to meet Title VII's threshold. Rather, it reflects a work environment "permeated with discriminatory intimidation, ridicule, and insult." *See Harris*, 510 U.S. at 21.

Second, a reasonable jury could find that the harassment was severe. Unambiguously ethnic slurs like "spic" and "wetback" surely fall on the more severe end of the spectrum of comments. *See Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950–51 (7th Cir. 2005) (stating that it was "difficult to imagine epithets more offensive to someone of Hispanic descent" than "spic" and "wetback"); *cf. Miller*, 277 F.3d at 1276–77 (finding sufficient evidence of a hostile work environment based on use of similar slurs). That it was Ortiz's direct supervisor making these comments compounds their severity. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d

---

[1] The School Board claims that Ortiz did not properly raise this fact (or others) at summary judgment because his response to the School Board's statement of material facts was deficient. But the district court did not make any clear ruling in this regard. While it noted that Ortiz's response was deficient under the local rules, it appears to have nonetheless considered the facts set forth in Ortiz's response and supporting materials. Accordingly, we consider the entire record that was before the court at summary judgment.

1240, 1251–57 (11th Cir. 2014) (distinguishing between conduct by supervisors and conduct by coworkers).

We acknowledge that Ortiz's testimony is vague as to the number of times he heard Kriegel use the ethnic slur "spic," stating only that it was "several times." It's also unclear whether Kriegel called Ortiz "spic" to his face or simply used the term in his presence, which we have indicated may be relevant in evaluating severity. *See id.* (distinguishing between employees who merely overhead a racial slur and employees at whom it was directed).

But there is no "'magic number' of racial or ethnic insults" that a plaintiff must prove. *Miller*, 277 F.3d at 1276. And we look to the totality of the circumstances in evaluating the objective severity of a work environment. When we do so, we see that the ethnic slurs merely punctuated Kriegel's daily derogation of Puerto Ricans and people of Hispanic descent, from belittling Ortiz by refusing to call him by his name to implying that Puerto Ricans were untrustworthy, lazy, and undeserving. *Cf. Smelter*, 904 F.3d at 1286 (noting, when evaluating severity, that a coworker's use of a racial slur "was not an isolated instance—it came at the end of two months during which [the plaintiff] had endured racist comments on a daily basis"). There is also evidence that Kriegel may have called Ortiz "spic" behind his back, if not to his face. Other coworkers made clear that Kriegel referred to Ortiz as "dumb spic" and "knock-kneed spic." Even assuming these slurs were not made in

12

Ortiz's presence, there is enough evidence in the record for a reasonable jury to conclude that Ortiz knew Kriegel was saying things of this sort behind his back. *See Torres v. Pisano*, 116 F.3d 625, 633 (2d Cir. 1997) ("[A]n employee who knows that her boss is saying things of this sort behind her back may reasonably find her working environment hostile."); *cf. Adams*, 754 F.3d at 1250 ("Courts conduct the objective assessment from the perspective of a reasonable person in the plaintiff's position, knowing what the plaintiff knew."). For instance, Wetzel testified that he accompanied Ortiz when Ortiz complained to management about Kriegel's "racist remarks" and references to him as "spic."

Third, a reasonable jury could find that the harassment was objectively humiliating. According to Ortiz, Kriegel used ethnic slurs, regularly made comments implying that Puerto Ricans were untrustworthy, lazy, and undeserving, and harassed him "every day on any type of work order." Not only that, but Kriegel never called Ortiz by his name and instead referred to him simply as "Puerto Rican," suggesting that Ortiz was not worthy of individual dignity or respect and was no different than the stereotype of Puerto Ricans reflected in Kriegel's comments. A reasonable person in Ortiz's position could view these comments and this conduct as demeaning and humiliating.

Finally, Ortiz's evidence as to the fourth factor—whether the harassment interfered with Ortiz's job duties—is weak. Ortiz and his coworkers testified that

13

Kriegel targeted Ortiz for harassment, but there is little to show that it impacted his job performance.  In any case, Ortiz's "claim does not fail simply because [he] provided little or no evidence [of] the impact of the harassment on [his] job performance."  *Smelter*, 904 F.3d at 1287.  Considering the totality of the circumstances, particularly the frequency and severity of the harassment, we conclude that Ortiz provided sufficient evidence for a reasonable jury to find that the harassment was objectively severe or pervasive.

## C.

As an alternative ground for affirmance, the School Board contends that it proved its entitlement to the affirmative defense established by the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  The district court did not reach this issue, but we may affirm the judgment on any ground supported by the record.  *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017).

Under *Ellerth/Faragher*, when a supervisor creates a hostile work environment that does not culminate in a tangible employment action, as is the case here, the "employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence."  *Ellerth*, 524 U.S. at 765.  "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the

14

plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).

The School Board maintains that it met both elements through undisputed evidence. It says that it has a non-discrimination policy that sets forth a complaint procedure for employees to report any alleged discrimination or harassment to the School Board's Equal Educational Opportunities ("EEO") Department. It asserts that Ortiz received a copy of this policy as part of the Employee Handbook, which he acknowledged receiving in November 2001. And it maintains that Ortiz unreasonably failed to utilize this procedure before filing a charge of discrimination with the EEOC.

We conclude that, on the current record, this defense is a matter properly for the jury, however. *See Frederick*, 246 F.3d at 1314 (concluding that triable factual issues precluded granting summary judgment based on an *Ellerth/Faragher* defense). In particular, we find a genuine issue of material fact as to whether the School Board took reasonable steps to effectively disseminate its non-discrimination policies and the complaint procedure. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000) ("[D]issemination of an employer's anti-

15

harassment policy [is] fundamental to meeting the requirement for exercising reasonable care in preventing sexual harassment."). Ortiz testified that he had not heard of the School Board's EEO office, that he was not aware of the internal policy for filing a written complaint, and that he had never read the non-discrimination policy. Along similar lines, one of Ortiz's coworkers, Robert Wetzel, testified that he was unfamiliar with the policy despite having worked for the School Board for over 24 years.

In this regard, the School Board's evidence that Ortiz received a copy of the Employee Handbook, which it says contained the non-discrimination policy, is insufficient. Ortiz may have received a copy of the Handbook in 2001, but the only part of the Handbook in the record is a cover page. And we cannot simply assume that the "Nondiscrimination Policy Statement" offered as evidence by the School Board is contained verbatim in the Handbook. The policy itself reflects that it was amended in March of 2011, well after Ortiz received a copy of the Handbook. Nor can we tell with any specificity, based on the current record, what the complaint procedure actually required.

For these reasons, we conclude that summary judgment is not appropriate on this record on the School Board's *Ellerth/Faragher* defense. We therefore decline to affirm on this alternative ground.

16

**IV.**

In sum, we affirm the district court's grant of summary judgment in favor of the School Board related to Ortiz's suspension without pay.  We vacate and remand for further proceedings on Ortiz's claim of a hostile work environment.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**